IN THE UNITED STATES DISTRICT COURT FILED JUL 1 1 2012
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE F. CRUZ-HERNANDEZ     :     CIVIL ACTION
                         :
        v.               :
                         :
JOHN THOMAS, et al.         :     No. 11-2978

### MEMORANDUM

J. WILLIAM DITTER, JR., J.             July 11ᵗʰ, 2012

      Presently before me is a pro se petition for writ of habeas corpus filed pursuant to

28 U.S.C. § 2254 by Jose F. Cruz-Hernandez and the response thereto. Cruz-Hernandez,

who is currently incarcerated in the State Correctional Institution in Chester,

Pennsylvania, challenges his incarceration for aggravated assault, simple assault, and

harassment. For the reasons that follow, the petition will be dismissed.

### FACTS AND PROCEDURAL HISTORY:

      The state court summarized the facts underlying Cruz-Hernandez's conviction as

follows:

> [Cruz-Hernandez's] convictions stem from a violent encounter on August
> 28, 2004 between [Cruz-Hernandez] and his then-girlfriend Arialis
> Caballero (Caballero), with whom [Cruz-Hernandez] resided. According to
> evidence presented at trial, Caballero arrived home at 2:00 or 2:30 a.m.
> after a night of drinking with friends. Before she could enter the residence,
> Caballero testified, [Cruz-Hernandez] appeared holding a kitchen knife and
> moved to physically attack her.
>
> Caballero began to run, with [Cruz-Hernandez] following, until she tripped
> and fell in the yard. All the while, he slashed at her with the knife.
> Caballero testified that [Cruz-Hernandez] cut her with the knife on her
> forehead, her left arm, her back, the back of her right leg, and her upper

ENTERED

JUL 12 2012

CLERK OF COURT

torso near her underarm area. She said that [Cruz-Hernandez] also repeatedly punched her in the head and kicked her in her right side. Caballero's son, who also lived in the residence, heard his mother scream outside. He emerged from the residence and saw [Cruz-Hernandez] standing over Caballero, who was lying on the ground, with a knife in his hand. He said that [Cruz-Hernandez] kicked Caballero in the head.[1] Caballero's son grabbed [Cruz-Hernandez] to allow his mother to escape. Caballero started away, but [Cruz-Hernandez] came after her again. Her son went back into the residence to get his brother, who also lived there.

Meanwhile, a neighbor and acquaintance of Caballero's son, Zachary Cross (Cross), was sitting outside on his porch with some friends. They overheard the muffled screams and yells of what sounded like two men and one woman. Three of them followed the sounds to a nearby back yard, where a woman was under attack. A man pulled the woman from her knees to her feet by her hair and repeatedly struck her as she tried to fend him off.[2] Cross did not see the man with a knife. Cross and his friends told the man to stop hitting the woman, and he did. All told, according to Caballero, the incident lasted approximately ten to fifteen minutes.

Caballero's son came back out of the house to see Cross and his friends pulling Caballero out of the back yard. One of Cross's friends carried Caballero to Cross's house and laid her on the ground outside. Caballero briefly lost consciousness after the attack. Cross saw that she was bleeding from her forehead and face and had wounds on her back. He went through two of his t-shirts trying to wipe away the large amount of blood that her wounds were producing.

When a police officer arrived in response to Cross's 9-1-1 summons, he observed Caballero lying on the sidewalk. She was in and out of consciousness and bleeding profusely from her head. Cabellero was taken immediately via ambulance to a hospital emergency room. The officer did not recover a knife in the course of his ensuing investigation.

At the hospital, a police evidence technician observed that Caballero had

---

[1]Caballero did not testify that [Cruz-Hernandez] kicked her anywhere but in her side.

[2]Caballero testified that [Cruz-Hernandez] did not pull her up after she fell.

lacerations on her head, upper torso, and arm; had bruising and swelling across her forehead; bore more bruises and scrapes on her legs, knee and thigh; and was bleeding from her nose, her mouth and the front and back of her head.[3] Caballero's treating physician sealed a one-centimeter forehead laceration and did not make note of any other wounds on Caballero's chart. Blood test results indicated that her blood alcohol level was about two times higher than the legal limit for driving under the influence in Pennsylvania.[4]

The doctor who treated Caballero testified that he took a statement from her about what happened for treatment purposes. His notes indicated that she had not said that the incident involved a knife or stabbing. He also testified that lacerations of the skin can be caused by a blunt force, such as a punch or falling against a wall corner.

Caballero was released from the hospital later that morning. She was out of work for a week; she said that she could not walk from the pain. She continued to experience pain from the incident until a month before trial.

[Cruz-Hernandez] took the stand and denied any attack on Caballero. He stated that he was awakened from sleep on the night in question by the sound of Caballero coming home drunk. He testified that he stepped out of his residence, verbally expressing his anger that she was late, and saw Caballero and three strange males in the back yard. He accused Caballero of having been with them that night and said that she could stay with them. He said that he returned to the house to put his sneakers on and go to an early work shift, whereupon Caballero's son and the three males from outside hit him with a baseball bat.

The officer who arrested [Cruz-Hernandez] on the night of the incident did see a bump on his head that was bleeding a bit. But the officer asked [Cruz-Hernandez] what had happened and [Cruz-Hernandez] answered, "She came home late; and so I beat her." N.T. Trial, 4/13/2005 at 69. For his part, Cross denied that anyone in his group had or used a baseball bat. Caballero's son also denied ever having a baseball bat, or seeing anyone hit [Cruz-Hernandez] with a baseball bat. He testified, however, that when the

---

[3]Photographs of some of Caballero's reported injuries were exhibited to the jury.

[4]The victim admitted that she had been drinking, but denied that she was intoxicated.

attack was over, he saw a different neighbor, whom he recognized but
didn't know, holding a baseball bat in the living room near [Cruz-
Hernandez].

Commonwealth v. Cruz-Hernandez, No. 799 MDA 2005, at 1-5 (Pa. Super. Dec. 7, 2005)

(unpublished memorandum).

After a jury trial before the Honorable Thomas G. Parisi, Court of Common Pleas

of Berks County, Cruz-Hernandez was convicted of aggravated assault, simple assault,

and harassment.  On April 15, 2005, Cruz-Hernandez was sentenced to a period of five to

ten years of imprisonment.

Cruz-Hernandez filed a counseled, direct appeal arguing that his conviction for

aggravated assault was based on insufficient evidence and was also against the weight of

the evidence.  On December 7, 2005, the Pennsylvania Superior Court affirmed the

judgment of sentence.  Commonwealth v. Cruz-Hernandez, No. 799 MDA 2005 (Pa.

Super. Dec. 7, 2005) (unpublished memorandum).  On December 16, 2005, nine days

after Cruz-Hernandez's conviction was affirmed by the Superior Court on direct appeal,

Cruz-Hernandez's appointed counsel advised him by letter of his intention to withdraw

his representation because he did not believe there were grounds for appeal to the

Pennsylvania Supreme Court.  See Resp't App. at 181A-182A.  Shortly thereafter, Cruz-

Hernandez's mother hired Peter David Maynard, Esquire, to pursue Cruz-Hernandez's

case.  After no activity in his appeal, Cruz-Hernandez wrote a letter to Attorney Maynard

in June 2006 advising him that he had "6 months left to appeal."  See Resp't App. at

4

187A.  Attorney Maynard did not respond until January 8, 2007, at which point he

advised Cruz-Hernandez that he did not believe that there were any valid issues to present

on appeal.  See Resp't App. at 188A.  The deadline for filing a timely PCRA petition had

expired on January 6, 2007.  Cruz-Hernandez filed a complaint with the Disciplinary

Board of the Supreme Court of Pennsylvania, as a result of which Attorney Maynard was

censured.  Cruz-Hernandez was informed of this fact on May 2, 2008.

On May 30, 2008, Cruz-Hernandez filed a pro se petition under Pennsylvania's

Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq., alleging that his

appellate rights had been forfeited due to the ineffective assistance of both appointed and

retained appellate counsel.  He also argued that his conviction for aggravated assault was

not supported by adequate evidence.  Counsel was appointed and filed an amended PCRA

petition.  An evidentiary hearing was held on October 16, 2008, during which the court

heard testimony from Cruz-Hernandez, his direct appellate counsel, and Attorney

Maynard.  The PCRA court denied Cruz-Hernandez's petition as untimely on April 2,

2009, after concluding that Cruz-Hernandez had not diligently pursued his appellate

rights.[5]  The Superior Court affirmed the dismissal of Cruz-Hernandez's PCRA petition

_____

[5]Pursuant to the PCRA, collateral actions must be filed within one (1) year of the date the
conviction at issue becomes final.  42 Pa. Cons. Stat. Ann. § 9545(b)(1).  In an attempt to
circumvent the PCRA's one year limitation period, Cruz-Hernandez argued in state court that the
facts underlying his claims were unknown to him and could not have been ascertained via due
diligence until May 2, 2008, when he received word of Attorney Maynard's censure.  The PCRA
court dismissed this claim after noting that Cruz-Hernandez testified at his PCRA hearing that he
was aware of the expiration of his appellate rights when he received Attorney Maynard's January

on July 23, 2010.  Commonwealth v. Cruz-Hernandez, No. 685 MDA 2009 (Pa. Super. July 23, 2010) (unpublished memorandum).  Cruz-Hernandez's petition for allowance of appeal was denied by the Pennsylvania Supreme Court on April 7, 2011.  Commonwealth v. Cruz-Hernandez, No. 611 MAL 2010 (Pa. April 7, 2011).

On April 27, 2011,[6] Cruz-Hernandez filed the instant petition for a federal writ of

_____

8, 2007, letter.  The court went on to conclude:

> A number of other facts support this conclusion.  For example, the letter Mr. Cruz-Hernandez received from [direct appeal counsel] upon the rendering of the Superior Court's decision clearly sets forth his intention to withdraw as counsel and the pending deadline for a petition to the Supreme Court.  In addition, the correspondence between Mr. Maynard and Mr. Cruz-Hernandez manifestly pertains to a PCRA petition, not an appeal.  There is no evidence that Mr. Cruz-Hernandez erroneously attempted to appeal after the deadline had passed.  Finally, Mr. Cruz-Hernandez's letter of June 23, 2006 appears to show his cognizance of the pending expiration of the PCRA deadline.  Therefore, the proposition that Mr. Cruz-Hernandez did not become aware that his appeal rights had expired until receiving word of Mr. Maynard's censure lacks credibility.  Mr. Cruz-Hernandez was aware of a potential PCRA claim against Mr. Maynard once he received the January 8, 2006 letter, and was aware of a potential claim against [direct appeal counsel] much earlier.  As the PCRA time constraints are jurisdictional in nature, and must be construed strictly, this Court concludes that Mr. Cruz-Hernandez's PCRA petition was untimely and he is ineligible for relief.

See Commonwealth v. Cruz-Hernandez, No. CP-06-CR-4695-2004, at 4-5 (Berks Co. Ct. Com. Pl., July 15, 2009) (citation omitted).

[6]I will presume that Cruz-Hernandez's petition was given to prison authorities on the date on which it was signed, April 27, 2011, and his petition will be deemed filed as of that date.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988) (a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court).

6

habeas corpus claiming that he was denied effective representation of counsel on appeal and that the evidence was insufficient to support his conviction for aggravated assault. Respondents' answer asserts that Cruz-Hernandez is not entitled to federal habeas relief because his petition is untimely.[7]  Cruz-Hernandez has filed a response to the Respondents' answer.

## DISCUSSION:

### 1. Statute of Limitations

Section 101 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), effective April 24, 1996, imposes a one (1) year limitation period to applications for writ of habeas corpus filed by persons in state custody.  28 U.S.C.A. § 2244(d)(1).  Section 2244, as amended, provides that the one (1) year limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was

---

[7]In their Memorandum in Support of Commonwealth's Answer to the Petition for Writ of Habeas Corpus, Respondents mistakenly identify the petitioner as "Felix Rosado" in the first sentence.  Because the relevant facts, history and subsequent argument all correctly reference the instant case, I will assume that the misidentification is a typographical error.

initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The amended statute also provides that the time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2).

In the instant case, the applicable starting point for the statute of limitations is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000). Cruz-Hernandez's conviction became final on January 6, 2006, when the time for filing a petition for allowance of appeal in the Pennsylvania Supreme Court expired. See Gonzalez v. Thaler, _ U.S. _, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012) (a judgment becomes "final" for purposes of § 2244(d)(1)(A) when the time for seeking direct review in the state court expires); see also Commonwealth v. Cruz-Hernandez, No. 685 MDA 2009, at 6 (Pa. Super. July 23, 2010); Pa.R.A.P. 1113(a) (a petition for allowance of appeal in the Pennsylvania Supreme Court is to be filed within thirty (30) days of the entry of the order of the Superior Court). Consequently, Cruz-Hernandez had until January 6, 2007, to timely file his § 2254 petition.

Cruz-Hernandez filed his petition on April 27, 2011, over four years after the

8

limitation period expired on January 6, 2007.[8]  He does not assert that there has been an impediment to filing his habeas petition which was caused by state action, that his petition involves a right which was newly recognized by the United States Supreme Court, or that there are new facts which could not have been previously discovered.  See 28 U.S.C. § 2244(d)(1)(B)-(D).  Consequently, Cruz-Hernandez would be barred from presenting his claims under § 2254, unless the instant petition is subject to equitable tolling.

### A.    Equitable Tolling Analysis

Equitable tolling is available in the context of a federal habeas petition in appropriate cases.  See Holland v. Florida, _ U.S. _ , 130 S.Ct. 2549, 2560, 177 L.Ed.3d 130 (2010).  A petitioner bears the burden of establishing his entitlement to equitable tolling through two (2) elements: (1) demonstrating that "extraordinary circumstances stood in the way of timely filing" and (2) exercising reasonable diligence in pursuing his rights.  Pabon v. Mahoney, 654 F.3d 385, 399 (3d Cir. 2011); see also Holland, 130 S.Ct. at 2562 quoting Pace, 544 U.S. at 418.  "There are no bright lines in determining whether equitable tolling is warranted in given case.  Rather, the particular circumstances of each

---

[8]Cruz-Hernandez filed a PCRA petition on May 30, 2008; however, this petition would not toll the federal statute of limitations because the petition was deemed untimely and thus, was not "properly filed."  See 28 U.S.C. § 2254(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (untimely PCRA petition is not "properly filed" application for relief entitled to statutory tolling under 28 U.S.C. § 2254(d)(2)).  In any event, the federal limitations period had already expired when the PCRA petition was filed.  Long v. Wilson, 393 F.3d 390, 394-395 (3d Cir. 2004) (petitioner's untimely state post-conviction petition, filed after time to file a habeas petition expired, did not toll the federal limitations period).  Consequently, Cruz-Hernandez's PCRA petition would not impact my calculations regarding the one (1) year limitation period.

petitioner must be taken into account." Pabon, 654 F.3d at 399 (citing Holland, 130 S.Ct. at 2563). Although "equitable tolling is appropriate when 'principles of equity would make the rigid application of a limitation period unfair' . . . courts need to be 'sparing in their use of' the doctrine." Id. (citing Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998) and Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999)).

### 1.    Extraordinary Circumstances

The Supreme Court has held that "'a garden variety claim of excusable neglect,' Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990), such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, Lawrence v. Florida, 549 U.S. 327, 336 (2007), does not warrant equitable tolling," Holland, 130 S.Ct. at 2564. Extraordinary circumstances have been found where: (a) the respondent has actively misled the plaintiff, (b) the petitioner has in some extraordinary way been prevented from asserting his rights, (c) the petitioner has timely asserted his rights mistakenly in the wrong forum. See Jones, 195 F.3d at 159.

In the instant case, Cruz-Hernandez argues that ineffective assistance on both direct and collateral appeal, as well as his inability to speak, read or write in English, constitute extraordinary circumstances which prevented him from asserting his rights in a timely manner and therefore, entitles him to equitable tolling. See Br. in Supp. of Habeas Corpus, at 1, 8-9. I will consider each of these claims individually and in combination.

In the recent case of Maples v. Thomas, _ U.S. _ , 132 S.Ct. 912, 181 L.Ed.2d 807

(2012), the Supreme Court held that abandonment by counsel without notice can constitute extraordinary circumstances which merits equitable tolling.[9]  In <u>Maples</u>, the petitioner's collateral appeal was prepared by two out-of-state attorneys who, while the appeal was pending, left their firm without notifying petitioner or the court.  <u>Id.</u> at 918-919.  As a result, petitioner never received notice of the denial of his appeal, nor was he aware that the time for appeal had been triggered.  <u>Id.</u> at 919-920.  Petitioner subsequently failed to file a timely appeal and, upon federal habeas review, was deemed to have procedurally defaulted the claims presented in his collateral appeal.  <u>Id.</u> at 921-922.  Upon review of the petitioner's case, the Supreme Court determined that the petitioner had shown "cause . . . to excuse the procedural default into which [the petitioner] was trapped when counsel of record abandoned him without a word of warning of his federal habeas

---

[9]In <u>Maples</u>, the Supreme Court discussed the issue of attorney abandonment on collateral appeal in the context of equitable tolling and procedural default.  <u>Maples</u>, 132 S.Ct. at 923 n.7 (the principles governing "the distinction between attorney negligence and attorney abandonment" would apply in the context of both procedural default and equitable tolling of a federal time bar).  I highlight this fact in order to distinguish my discussion here from one which would analyze an independent claim for habeas relief based upon attorney abandonment during a discretionary appeal.  Criminal defendants have a constitutional right to counsel on their direct appeal as of right, <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000); however, they do not have a constitutional right to counsel to pursue discretionary appellate review in a state's highest court.  <u>Wainwright v. Torna</u>, 455 U.S. 586, 587 (1982) (there is no constitutional right of counsel to pursue discretionary state appeals or applications for review by state's highest court).  Review by the Pennsylvania Supreme Court on a petition for allocatur is discretionary.  Thus, any attempt to assert an independent habeas claim that Cruz-Hernandez was denied his right to effective assistance of counsel due to counsel's failure to file a discretionary appeal to the Pennsylvania Supreme Court would be dismissed.  <u>See</u> <u>infra</u>.

11

claims."[10]  Id. at 927.

Although Cruz-Hernandez argues that abandonment by counsel on appeal impeded his ability to file his habeas petition in a timely manner, I conclude that he cannot successfully argue that direct appeal counsel abandoned him without notice.  In the instant case, direct appeal counsel provided Cruz-Hernandez notice of his intent to withdraw his representation 21 days prior to the deadline for filing a discretionary appeal to the Pennsylvania Supreme Court.  In a letter dated December 16, 2005, direct appeal counsel advised Cruz-Hernandez that he had "the right to seek other counsel to [file a petition in the Pennsylvania Supreme Court], or to pursue any claims yourself which you feel should be heard . . ." by January 6, 2006.  See Resp't App. at 181A-182A.  In fact, Cruz-Hernandez acted upon this notification from direct appeal counsel and promptly retained new counsel.  Because counsel on direct appeal provided appropriate notice and advice, he did not impede Cruz-Hernandez's ability to file a timely discretionary direct appeal or a collateral appeal.  See generally Torna, 455 U.S. at 587-88 (holding that a criminal defendant does not have a constitutional right to pursue discretionary state appeals).

The representation of retained counsel on collateral appeal is more problematic.  In a letter dated February 14, 2006, Attorney Maynard acknowledged that Cruz-Hernandez

---

[10]In Maples, the court reasoned that, under agency principles, a petitioner cannot be charged with the acts or omissions of an attorney who has abandoned him.  132 S.Ct. at 924.

had "a limited amount of time to file a PCRA petition." See Resp't App. at 185A.

Notwithstanding, Attorney Maynard did not respond to the two subsequent letters which

Cruz-Hernandez sent to him in February and June 2006 regarding the status of his appeal.

See Resp't App. at 186A, 187A.  Indeed, Attorney Maynard did not correspond with

Cruz-Hernandez until after the PCRA statute of limitations had expired on January 6,

2007, indicating in a letter dated January 8, 2007, that Cruz-Hernandez did not have any

"legitimate, valid issues" to present on appeal.  See Resp't App. at 188A.  Attorney

Maynard did not provide any further assistance to Cruz-Hernandez.

     Despite the inadequacies of Attorney Maynard's representation, Cruz-Hernandez

was aware of the impending deadlines for filing his appeals but did nothing to protect his

own interests.  Thus, Attorney Maynard's conduct, deficient as it was, failed to constitute

"extraordinary circumstances" which impeded Cruz-Hernandez's ability to file in a timely

manner.  This conclusion is evidenced by Cruz-Hernandez's correspondence with

counsel.  After Attorney Maynard was retained in January 2006, Cruz-Hernandez wrote at

least four letters to Attorney Maynard regarding a potential PCRA petition.[11]  In

correspondence from January 2006 through at least June 23, 2006, Cruz-Hernandez

acknowledges his uncertainty as to whether Attorney Maynard is representing him and

notes that he is aware of the time limitations for filing his appeal.  Specifically, Cruz-

---

    .[11]Cruz-Hernandez testified at his PCRA hearing that he wrote two additional letters to
Attorney Maynard between June 2006 and January 2007, to which he never received a response.
(N.T. 10/16/2008, at 14).  These letters are not in the record.

Hernandez acknowledged in his letter to Attorney Maynard dated June 23, 2006, that after having no contact with him for 5 months, "I want to know if you are representing me in my case or not."  See Resp't App. at 187A.  In that letter, he also noted that he only had "six months left to appeal."[12]  Id.  Cruz-Hernandez's correspondence indicates that he was familiar with his claims,[13] on notice that counsel may not be representing his interests, and aware of pending deadlines, yet he failed to take any action to protect his appellate rights.

The instant case is complicated, however, by the fact that Cruz-Hernandez also argues that he is unable to read, write or speak in English.  In Pabon, the Third Circuit reversed the dismissal of a habeas petition as time-barred and remanded to the district court for an evidentiary hearing after concluding that Pabon may have faced extraordinary circumstances due to a language barrier.  654 F.3d at 400-402.  In that case, the Third Circuit noted that the petitioner "consistently claimed to be a non-English speaker, required a translator in his interactions with police and the court system, lacked access to legal materials or notice of AEDPA in Spanish in the RHU [Restricted Housing Unit]

_____

[12]The deadline for filing a timely PCRA appeal or a timely federal habeas petition would have been January 6, 2007.  See Commonwealth v. Cruz-Hernandez, No. 685 MDA 2009, at 6.

[13]In a letter dated December 23, 2005, to direct appeal counsel, Cruz-Hernandez notes that he feels counsel's "argument could have been stronger" and "that there were a few other things that it lacks, like Case Law backing any of my points."  See Resp't App. at 183A.  In a February 16, 2006, letter to Attorney Maynard, Cruz-Hernandez tells Maynard "[i]f you cannot do the PCRA on your own, please return the money back to my family immediately.  I know jail house attorneys who have experience to file in both state and federal court who will locate meritorious issues for a timely PCRA."  See Resp't App. at 186A.

where he was housed for five years, and was repeatedly denied legal materials in Spanish or translation assistance." Pabon, 654 F.3d at 401.  The Third Circuit concluded that a petitioner's "inability to read or understand English, combined with denial of access to translation or legal assistance, can constitute extraordinary circumstances that trigger equitable tolling." Id. at 400.  Here, the state court has acknowledged that Cruz-Hernandez could not read or write in English.[14]  The record also reflects that Cruz-Hernandez had a translator at his trial and sentencing.  (N.T. 4/13/05, 4/14/05, 4/15/05).  Moreover, Cruz-Hernandez testified at his PCRA hearing that he only reached the fifth or sixth grade in school.  (N.T. 10/16/08, at 11, 16).  In contrast to Pabon, however, Cruz-Hernandez has not alleged in the instant petition that he requested and was denied access to translation or legal assistance.  He also has not argued that his prison does not provide Spanish materials.  Furthermore, Cruz-Hernandez has conceded that his prison cell-mates assist him in writing letters and with legal filings.  (N.T. 10/16/08, at 17).  Cruz-Hernandez's ability to write letters and file legal documents, even if by proxy, in English, forecloses the argument that the language barrier, in isolation, prevented his filing in a

_____

[14]In affirming the denial of Cruz-Hernandez's PCRA appeal, the Superior Court noted that, despite the inadequacy of Cruz-Hernandez's brief, "we . . . decline to quash his appeal as we are cognizant that he is unable to read or write the English language and filed the instant brief on his own behalf.  We are able to decipher Cruz-Hernandez's primary claim raised herein on appeal and, as such, we will proceed to address the merits of his claim." Commonwealth v. Cruz-Hernandez, No. 685 MDA 2009, at 3 (Pa. Super. July 23, 2010).  Despite acknowledging Cruz-Hernandez's language problem, the state court did not appear to consider his illiteracy a factor in concluding that Cruz-Hernandez had not filed his PCRA petition in a timely manner.

timely manner.

As the Third Circuit has noted, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates to meeting AEDPA's one-year deadline." Pabon, 654 F.3d at 401. Undoubtedly, direct appeal counsel's refusal to file a petition for allowance of appeal in the Pennsylvania Supreme Court, Attorney Maynard's subsequent conduct in failing to file a collateral appeal, and Cruz-Hernandez's lack of proficiency in the English language made it difficult for Cruz-Hernandez to navigate the appellate process; however, Cruz-Hernandez was aware of the deadlines and has proven himself capable of pursuing his own interests. As a result, I find that Cruz-Hernandez has not demonstrated "extraordinary circumstances" which rendered him incapable of filing a timely habeas petition.

### 2.    Reasonable Diligence

In any event, in order to qualify for equitable tolling, Cruz-Hernandez must also establish that he has exercised reasonable diligence in pursuing his claims. Holland, 130 S.Ct. at 2565. He has failed to do so in this case. Reasonable diligence was addressed by the Supreme Court in Holland where the Court explained that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' . . . not 'maximum feasible diligence.'" Pabon, 654 F.3d at 402 (citing Holland, 130 S.Ct. at 2565). "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after

the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

In Pabon, the Third Circuit found that the petitioner had been consistently diligent and was able to count "ten or more efforts where [the petitioner] sought assistance, both before and after the AEDPA deadline." Pabon, 654 F.3d at 402. Cruz-Hernandez has not demonstrated such consistent diligence. Although Cruz-Hernandez knew for certain on January 8, 2007, that his lawyer had not filed a timely PCRA petition, he chose to file a complaint with the Office of Disciplinary Counsel and waited for almost a year and a half for the disposition of that complaint. I conclude that his failure to pursue any kind of appeal of his conviction during the time his complaint was pending does not comport with the standard of "reasonable diligence." As a result, Cruz-Hernandez is not entitled to equitable tolling.

## 2. **Review of Claims**

Even assuming, however, that I had found that Cruz-Hernandez was entitled to equitable tolling, I conclude that, upon review of his claims, his petition is meritless.

### A. **Ineffective Assistance of Counsel**

Cruz-Hernandez first argues that he was denied his appellate rights on direct appeal when counsel failed to file a discretionary appeal and on collateral appeal when

17

counsel failed to file a timely PCRA petition.  Neither of these claims merits habeas

relief.  The Supreme Court has held that there is no constitutional right to counsel on

discretionary appeals.  See Ross v. Moffitt, 417 U.S. 600, 610-11 (1974).  Moreover, a

criminal defendant does not have a constitutional right to pursue discretionary state

appeals.  Torna, 455 U.S. at 587-88.  Because there is no federal constitutional right to

counsel once the first appeal of right has been decided, direct appeal counsel's failure to

file Cruz-Hernandez's discretionary appeal to the Pennsylvania Supreme Court did not

deprive Cruz-Hernandez of the effective assistance of counsel.[15]  Id. at 587-88.

In addressing Cruz-Hernandez's claim of ineffective assistance of counsel on

collateral appeal, I note that the Constitution does not dictate a standard for attorney

effectiveness in a post-conviction, collateral attack.[16]  Pennsylvania v. Finley, 481 U.S.

551, 555 (1987).  As a result, I conclude that Cruz-Hernandez's claim of ineffective

assistance of counsel on collateral appeal is non-cognizable as an independent § 2254

---

[15]Moreover, as previously noted, counsel on direct appeal provided Cruz-Hernandez with
adequate notice and guidance related to his decision not to file a petition for allowance of appeal
in the Pennsylvania Supreme Court.

[16]While the Supreme Court has recently held that certain deficiencies in representation on
collateral appeal may provide the opportunity for habeas review, these cases do not establish an
independent claim for habeas relief based on the ineffective assistance of counsel on collateral
appeal.  See, e.g., Maples, 132 S.Ct. 912 (abandonment by counsel without notice on collateral
appeal may establish cause for procedurally defaulted claim or supply grounds for tolling of
federal time bar); Martinez v. Ryan, _ U.S. _ , 132 S.Ct. 1309, 1315, 1319, 182 L.Ed.2d 272
(2012) (expressly making an equitable ruling, not a constitutional ruling, in concluding that
"[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause
for prisoner's procedural default of a claim of ineffective assistance at trial.").

claim.

Accordingly, both of Cruz-Hernandez's claims of ineffective assistance of counsel are dismissed.

### B. Sufficiency of the Evidence

In his next claim, Cruz-Hernandez argues that the evidence produced at trial was insufficient to sustain his conviction for aggravated assault.[17]  It has long been established that due process requires that a person can only be convicted of the crime with which he is charged by proof of every element of the criminal offense beyond a reasonable doubt.[18] Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970); Davis v. United States, 160 U.S. 469, 488 (1895).  In reviewing challenges to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting Jackson, 443 U.S. at 319) (emphasis in original); see also McDaniel v. Brown, _ U.S. _ , 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (2010).  The task of resolving differences in the testimony, weighing the

_____

[17]This claim was reviewed and denied by the Pennsylvania Superior Court on direct review.

[18]When reviewing a sufficiency of the evidence claim on habeas corpus review, federal courts look to the evidence the state considers adequate to meet the elements of a crime governed by state law.  Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997).

evidence, and drawing reasonable inferences from basic facts to ultimate facts is reserved

for the factfinder and is beyond the scope of federal habeas sufficiency review.  Jackson,

443 U.S. at 319, see also Coleman v. Johnson, _ U.S. _ , 132 S.Ct. 2060, 2064, 182

L.Ed.2d 978 (2012) ("Jackson leaves juries broad discretion in deciding what inferences

to draw from the evidence presented at trial").

   The AEDPA has limited a habeas court's role in reviewing a claim that the

evidence adduced at trial was insufficient to support a conviction.  Under 28 U.S.C.

§2254(d)(1), a writ of habeas corpus may be issued for evidentiary insufficiency only if

the state courts have unreasonably applied the Jackson "no rational trier of fact standard"

or the state equivalent of the Jackson standard.  See Kirnon v. Klopotoski, 620 F.Supp.2d

674, 686 (E.D. Pa. 2008).

   I conclude that the state courts' application of the state court equivalent of the

Jackson standard was within the bounds of reasonableness.[19]  In analyzing this claim, the

state court outlined the relevant state law as follows:

> Section 2702(a)(1) provides that "[a] person is guilty of aggravated assault
> if he . . . attempts to cause serious bodily injury to another, or causes such
> injury intentionally, knowingly or recklessly under circumstances
> manifesting extreme indifference to the value of human life."  [Cruz-
> Hernandez's] conviction is for aggravated assault based on attempt.  The
> Commonwealth was required to prove that [Cruz-Hernandez], specifically
> intending to inflict serious bodily injury upon another, took a substantial

_____

[19]Although the state court did not specifically cite Jackson, Pennsylvania law comports
with the Jackson standard.  See Evans v. Court of Common Pleas, Delaware County, 959 F.2d
1227, 1232 (3d Cir. 1992).

step towards causing such injury.  <u>Commonwealth v. Alford</u>, 880 A.2d 666,
670 (Pa. Super. 2005) (citation omitted).  Serious bodily injury is defined as
"bodily injury which creates a substantial risk of death or which causes
serious, permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

<u>Commonwealth v. Cruz-Hernandez</u>, No. 799 MDA 2005, at 6 (Pa. Super. Dec. 7, 2005)

(unpublished memorandum).  In state court, Cruz-Hernandez argued that inconsistencies

in the witnesses's testimony as to the issue of the possession and use of a knife rendered

the verdict unreliable.  Upon review of the evidence, the state court concluded:

> We note first that conflicts in the evidence are not so extensive that the
> verdict of guilt (sic) can be viewed as the product of conjecture.  Three
> witnesses (the victim, her son, and the neighbor Cross) testified directly to
> what happened in the attack.  In spite of some differences, the testimony of
> the three witnesses is basically consistent and flows together naturally.
> Their accounts differ chiefly concerning exactly how and where [Cruz-
> Hernandez] injured the victim – whether with a knife, his feet, his fists, or
> some combination of the three, and whether in her side, her back, around
> her head, or all three.  With the exception perhaps of conflicts concerning
> [Cruz-Hernandez's] use of a knife, these inconsistencies are reasonably
> capable of resolution; the Commonwealth's evidence supports findings that
> the son and the neighbor observed the attack at different points in time, that
> neither witnessed the entire incident, and that towards the end of the assault
> the victim was near unconsciousness.
>
> Without relying on the conflicting evidence as to the existence of a knife,
> we find that the record reveals evidence sufficient to conclude beyond a
> reasonable doubt that [Cruz-Hernandez] intended to cause serious bodily
> injury and is guilty of aggravated assault.  Taken together, the witnesses'
> testimony shows that [Cruz-Hernandez] chased the victim until she fell,
> then kicked her repeatedly in the side, punched her and/or kicked her in her
> head, and finally yanked her to her feet by her hair and hit her repeatedly
> until the neighbor stopped him.  Testimony and photographs revealing that
> the victim sustained bruises and lacerations on her head and face area, her
> arm, and her torso support a finding that [Cruz-Hernandez] inflicted

multiple blows, sometimes directing them at vital areas of the victim's body.  There was convincing evidence that, in addition to losing consciousness for periods of time just after the incident, the victim bled a great deal from her injuries.

The jury reasonably could have inferred from all the foregoing that [Cruz-Hernandez] stopped viciously beating a bleeding and nearly unconscious victim only because the neighbor intervened.  From that, the jury logically could have concluded that [Cruz-Hernandez's] specific intent was to inflict serious bodily injury on the victim.

Commonwealth v. Cruz-Hernandez, No. 799 MDA 2005, at 7-9 (Pa. Super. Dec. 7, 2005)

(unpublished memorandum) (footnotes and citations omitted).

In viewing the evidence in the light most favorable to the Commonwealth, I

conclude that the Pennsylvania courts reasonably found that a rational trier of fact could

have found beyond a reasonable doubt that the evidence was sufficient to support Cruz-

Hernandez's conviction for aggravated assault.  See Jackson, 443 U.S. at 318-319.  As in

the state courts, Cruz-Hernandez argues here that inconsistent testimony regarding the use

of a knife during the attack proves that he lacked specific intent to cause serious bodily

harm.[20]  See, e.g., Rebuttal to the Answer, at 2-3.  However, as the state court determined,

the use of a knife during the attack became irrelevant in light of the other evidence

_____

[20]This argument may be based on Cruz-Hernandez's mistaken assumption that he was convicted of aggravated assault under both 18 Pa.C.S.A. § 2702(a)(1) and 18 Pa.C.S.A. § 2702(a)(4).  See Br. in Supp. of Habeas Corpus, at 1 n.1.  Although he was convicted under 18 Pa.C.S.A. § 2702(a)(1), Cruz-Hernandez was acquitted of aggravated assault with a deadly weapon, 18 Pa.C.S.A. § 2702(a)(4), and possessing an instrument of crime, 18 Pa.C.S.A. § 907(a).  See Commonwealth v. Cruz-Hernandez, No. 799 MDA 2005, at 1 (Pa. Super. Dec. 7, 2005); see also Resp't App. at 2A-3A.

presented at trial.  See Commonwealth v. Caterino, 678 A.2d 389, 391 (Pa. Super. 1996) (intent to cause serious bodily harm may be shown by circumstances surrounding the incident) (citation omitted).  Witness testimony indicated that Cruz-Hernandez punched and kicked the victim multiple times causing bruising, lacerations and loss of consciousness.  Moreover, Cruz-Hernandez's assault did not stop until a neighbor intervened.  Upon consideration of all the evidence presented, the jury clearly was justified in concluding that Cruz-Hernandez took a substantial step towards causing serious bodily injury to the victim and therefore, had the specific intent to do so.  Jackson, 443 U.S. at 319; see generally Commonwealth v. Alford, 880 A.2d 666, 670 (Pa. Super. 2005) (citation omitted).  Since the state courts' findings are not contrary to United States Supreme Court precedent nor an unreasonable determination of the facts, the state courts' findings will not be overturned.  28 U.S.C. § 2254(d).  Accordingly, Cruz-Hernandez's claim is denied.[21]

## CONCLUSION:

After close and objective review of the arguments and evidence, I conclude that Cruz-Hernandez's petition for writ of habeas corpus is untimely, and otherwise without

---

[21]To the extent that Cruz-Hernandez also attempts to present a weight of the evidence claim, I note that such a claim is also not cognizable on habeas review.  See Tibbs v. Florida, 457 U.S. 31, 42-45 (1982) (distinguishing a weight of the evidence argument from a sufficiency of the evidence argument).  A federal habeas court has no power to grant habeas corpus relief because it finds that a state conviction is against the "weight" of the evidence.  Smith v. Vaughn, 1997 WL 338851, at *8 (E.D. Pa. June 17, 1997).

merit.  Accordingly, Cruz-Hernandez's petition will be dismissed.

Similarly, because Cruz-Hernandez's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter.  See 28 U.S.C. § 2254(e)(2); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.